UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                )
                                      )
    RICHARD L. MATTHEWS           )   Case No. 13-10521-BFK
                                      )   Chapter 7
                Debtor        )

**MEMORANDUM OPINION**

This matter comes before the Court on two Motions: (a) the Debtor's Motion to Extend the Automatic Stay pursuant to 11 U.S.C. § 362(c)(3) (Docket No. 4); and (b) the Motion of Ann M. Callaway, Conservator for George A. Gray, III, to Dismiss this Case for Abuse pursuant to 11 U.S.C. § 707(b) (Docket No. 10).  Having heard the evidence and the arguments of the parties, the Court will deny the Debtor's Motion to extend the automatic stay as moot, in light of the fact that the Court will grant the creditor's Motion to Dismiss.

**Procedural History**

Mr. Matthews filed his first bankruptcy case with this Court on September 4, 2012, pursuant to Chapter 13 of the Bankruptcy Code.  Case No. 12-15359.  At the time he filed his first bankruptcy petition, Mr. Matthews was a Defendant in a State court lawsuit brought by Ms. Callaway, arising out of a failed real estate transaction in which Mr. Matthews was the putative purchaser.  A Chapter 13 Plan was conditionally confirmed, over the objections of Ms. Callaway.  Case No. 12-15359, Docket Nos. 18 (Objections), 31 (Supplemental Objections) & 44 (Order Conditionally Confirming Plan).  The Order Conditionally Confirming the Plan provided in relevant part:

> 5.    Confirmation of Debtor's Plan is conditioned upon resolution of the claim of Ann M. Callaway, Conservator for George A. Gray, III.  Debtor shall promptly file any objection he has to the same on or before December 31, 2012, which objection shall be

1

    expeditiously prosecuted to conclusion. Upon resolution of the claim objection, and on motion of a party in interest, the Court may modify the Plan in light of the resolution of the claim.

    6.    Debtor shall not dissipate, expend or diminish the assets or accounts listed on Schedule B without an Order of the Court.

Docket No. 46.

On December 27, 2012, rather than file an Objection to Ms. Callaway's claim, the Debtor filed a Motion to Dismiss his bankruptcy case. Case No. 12-15359, Docket No. 48. The Court granted the Debtor's Motion to Dismiss on January 4, 2013. *Id.*, Docket Nos. 49-50.

On February 2, 2013, less than a month after the dismissal of his Chapter 13 case, the Debtor filed this Chapter 7 case. The Debtor promptly filed a Motion to extend the automatic stay, to which Ms. Callaway objected. Docket Nos. 4 & 10. Ms. Callaway, in the meantime, filed a Motion to Dismiss this case, to which the Debtor objected. Docket Nos. 10 & 16.

The Court heard evidence and argument on the two Motions on February 20, 2013, at which the Debtor testified. At the end of the hearing, the Court took the matter under advisement and invited the parties to file post-trial briefs. *See* Docket Nos. 25 & 28.

### Findings of Fact

Having heard the evidence, the Court makes the following findings of fact:

    1.    Mr. Matthews is 70 years old. He is married and lives at 4592 Hillside Court, Warrenton, Virginia 20187 (the "Hillside Court Property"), with his wife.

    2.    Mr. and Mrs. Matthews own the Hillside Court Property jointly, as tenants by the entirety. The property is encumbered by a Deed of Trust securing an equity line of credit in favor of Wells Fargo Bank, N.A., in the amount of $20,000. Docket No. 1, Schedule. D. Mr. and Mrs. Matthews took out this loan on June 8, 2007. *Id.*

3. Mr. and Mrs. Matthews also own a duplex with two rental units located on Plain Road, in Warrenton, Virginia (the "Plain Road Units"). The units have separate tax identification numbers. The Plain Road Units were owned by R.E.M.I., L.P. ("REMI"). Mr. and Mrs. Matthews had an ownership interest in REMI along with four other couples. In July 1996, Mr. and Mrs. Matthews paid off the other investors and took title to the units as tenants by the entirety. They then took out a mortgage on the units with M&T Bank, in the amount of $70,000.[1]

4. The Plain Road Units are rented for $1,190 and $1,100 per month. They are managed by Mr. and Mrs. Matthews, using REMI. Mr. and Mrs. Matthews each own 50% of REMI. The rents are deposited into an account held by REMI and are disbursed from there for purposes of paying the M&T mortgage, real estate taxes and the like. The monthly mortgage payment to M&T is $877.

5. On April 2, 2010, Mr. Matthews entered into a contract with the Fauquier Bank (Trustee) and George Gray, III, through Ann Callaway, PC, for the purchase of real property located at 5441 Baldwin Street, Warrenton, VA 20187 (the "Baldwin Property"). Case No. 12-15359, Claim 1-1. The Baldwin Property, according to Mr. Matthews, was a farm but had the potential to be commercially developed.

6. Ms. Callaway alleges that Mr. Matthews defaulted on the contract. On July 20, 2012, Ms. Callaway, as Conservator for George A. Gray, III, filed suit in the Circuit Court of Fauquier County against Mr. Matthews. Case No. 12-15359, Claim 1-1. Ms. Callaway filed a

---

[1] In his Chapter 13 case, Mr. Matthews initially did not list the two units on Schedule A (Real Estate Owned). *See* Case No. 12-15359, Docket No. 11. Rather, he listed them on Schedule B (Personal Property) as being owned by REMI. *Id.*, Docket No. 11, Schedule B ("Debtor's 50% ownership in R.E.M.I. – L.P. #2 (owns and manages a duplex located in Warrenton, Va.)"). Mr. Matthews's Chapter 13 Plan was conditionally confirmed on December 3, 2012. *Id.,* Docket No. 44. On December 19, 2012, Mr. Matthews amended his Schedules to indicate that the units were owned by him and his wife as tenants by the entirety. *Id.*, Docket No. 46.

proof of claim with this Court in Mr. Matthews' Chapter 13 case, in the amount of $77,654.00 ("the Callaway claim"). Case No. 12-15359, Claim No. 1-1. Mr. Matthews disputes the Callaway claim.[2]

7.      Mr. Matthews asserts that the real estate agent who represented him in the Baldwin Property transaction was negligent (or worse). Therefore, if he is found liable to Ms. Callaway, he asserts that the real estate agent should indemnify him for any losses. Mr. Matthews acknowledges, however, it is unlikely that he'll ever be able to collect on a judgment against the real estate agent.[3]

8.      Mr. and Mrs. Matthews jointly own three vehicles: a 2012 Toyota Pre-Runner pickup truck, with 7,800 miles; a 2007 Toyota Sienna van with 68,500 miles; and a 1997 BMW Z3 with 84,500 miles. Docket No. 1, Schedule B. Mr. Matthews acknowledges in this case that one-half of the equity in these vehicles will be available to the Chapter 7 Trustee, subject to whatever claim of exemptions in the vehicles may be available to him.

9.      Mr. Matthews' financial condition between the filing of his Chapter 13 case and the filing of this Chapter 7 case was largely unchanged. There are three notable exceptions:

| Account | Chapter 13 Balance | Chapter 7 Balance |
| --- | --- | --- |
| BB&T Checking (#7486) | $7,801.08 | $500.62 |
| The Fauquier Bank (#4407) | $4,080.00 | (Not Listed) |
| Scott & Stringfellow (#1929) | $35,429.55 | $19,980.08 |

---

[2] The present Chapter 7 case was filed as a "No Asset" case. Docket No. 6. Therefore, Ms. Callaway was not required to file a proof of claim in this case.

[3] The Debtor now suggests that the Chapter 7 Trustee should pursue this litigation against the real estate agent, and others. Docket No. 28, n.1 & p. 11 (describing them as "excellent claims").

4

*Compare* Case No. 12-15359, Docket No. 11, Schedule B, *with* Case No. 13-10521, Docket No. 1, Schedule B.

10. Mr. Matthews testified that he and his wife used the BB&T Checking account as their vacation savings account. He testified that they used money from this account to go on a cruise together. The cruise cost approximately $7,000 and took place between September 28, 2012, and October 5, 2012. The Debtor and his wife went on this cruise while his Chapter 13 case was pending.

11. Mr. Matthews testified that the Fauquier Bank account was in his wife's name alone. Consequently, he asserts it should not have been listed in his Chapter 13 case.

12. Mr. Matthews testified that he used approximately $14,000 from the Scott & Stringfellow account for repairs and upgrades in the form of new gutters, flooring and painting for the Hillside Court Property and for the Plain Road Units. He further testified that he returned approximately $1,200 into this account, so the current balance is $21,000. Mr. Matthews testified that he had this work done in January and February 2013.[4]

13. The Debtor testified that he is retired (though it appears he continues to work as a substitute teacher for the Fauquier County Public Schools). Mr. Matthews testified that in 2012 he earned approximately $3,200 in substitute teaching income from Fauquier County.

14. Other than the home equity line on the Hillside Court Property and the M&T Bank mortgage on the Plain Road Units (on both of which the Debtor is current), the only claim

---

[4] The precise timing of when the work was performed and paid for was not clear from the testimony. The Court will assume that the work was performed and paid for between the dismissal of Mr. Matthews's Chapter 13 case on January 4, 2013, and the filing of this case on February 2, 2013. If the work was performed and paid for before the dismissal of his Chapter 13 case, Mr. Matthews would have been in violation of Judge Mayer's Order not to dissipate any of the assets. Case No. 12-15359, Docket No. 44. If the work was performed and paid for after February 2nd, Mr. Matthews would have been in violation of his obligations to cooperate with the Chapter 7 Trustee, and to turn over all property, under Section 521(a)(3)-(4) of the Bankruptcy Code.

in the case is the Callaway claim. The Debtor owes no taxes, has no mortgage delinquencies and owes no other unsecured claims. *See* Docket No. 1, Schedules D (Creditors Holding Secured Claims), E (Creditors Holding Unsecured, Priority Claims) & F (Creditors Holding Unsecured Non-Priority Claims).

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for this District of August 15, 1984. This is a core proceeding, within the meaning of 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

**I.     The Debtor's Motion to Extend the Automatic Stay is Moot.**

Section 362(c)(3) of the Bankruptcy Code applies when the Debtor has two bankruptcy cases pending within a year, and the preceding case is dismissed for reasons other than under Section 707(b). It provides as follows:

> if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—
>
> (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate *with respect to the debtor* on the 30th day after the filing of the later case;
>
> (B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; and
>
> (C) for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted *by clear and convincing evidence to the contrary*)—

   (i) as to all creditors, if—

    (I)  more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;

    (II)  a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to—
(aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
(bb) provide adequate protection as ordered by the court; or
(cc) perform the terms of a plan confirmed by the court; or

    (III)  there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded—
(aa) if a case under chapter 7, with a discharge; or
(bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

   (ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor[.]

11 U.S.C. § 362(c)(3) (emphasis added).

  In this case, the Debtor comes within the terms of Section 362(c)(3) because he is an individual and his previous Chapter 13 case was dismissed within the year preceding the filing of this case (for reasons other than those under Section 707(b)).  Ms. Callaway argues that, under the "clear and convincing" standard, the Debtor has not met his burden to show that this case was filed not in good faith.  The Chapter 7 Trustee, Mr. King, takes no position on whether the stay should be continued as against the Debtor personally.  For example, the Debtor's post-petition earnings are not property of the estate in a Chapter 7 case, 11 U.S.C. § 541(a)(6), and the Trustee takes no position on whether Ms. Callaway should be permitted to garnish the Debtor's post-

petition wages. The Trustee argues, however, that the automatic stay should remain in place as to non-exempt property of the estate. In this argument, the Trustee is correct. *See In re Tubman*, 364 B.R. 574, 583 (Bankr. D. Md. 2007) ("[T]his Court agrees with the majority of courts that have considered this issue to date and accordingly holds that when Section 362(c)(3)(A) self-executes, the automatic stay is terminated as to actions against the debtor and property of the debtor but not as to any actions against property of the estate.")

Regardless of this plain-meaning interpretation of the statute, though, the Court finds that the Debtor's Motion to extend the automatic stay is moot, in light of the Court's decision to dismiss this bankruptcy case, below.

## II.   The Court Will Grant Ms. Callaway's Motion to Dismiss.

Section 707 of the Bankruptcy Code deals with how a Chapter 7 case may be dismissed or converted. Section 707(b)(1) of the Bankruptcy Code provides as follows:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

11 U.S.C. § 707(b)(1).

For debtors whose debts are primarily consumer debts and who have income greater than their State's median income, the Code provides a formula known as the "means test." 11 U.S.C. § 707(b)(2). The application of the means test may give rise to a presumption of abuse. *Id.* When it arises, this presumption of abuse may be rebutted by evidence of "special

circumstances," such as a serious medical condition or a call to active duty in the Armed Forces. 11 U.S.C. § 707(b)(2)(B)(i).

Finally, Section 707(b)(3) of the Code provides that if the presumption of abuse does not arise or is rebutted, the Court shall consider:

> (A) whether the debtor filed the petition in bad faith; or
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

The instant case is not a "means test" case in which the Court is called upon to determine whether Mr. Matthews' income and expenses give rise to a presumption of abuse under Section 707(b)(2) of the Bankruptcy Code. This is because Mr. Matthews is not a debtor whose debts are primarily consumer debts. According to the Debtor's Schedules, the sole consumer debt in the case is a home equity line of credit against the Hillside Court Property, in the amount of $19,967.00. Docket No. 1, Debtor's Schedule D. The only other debts in the case are: (a) a $70,000 Deed of Trust obligation against the Plain Road Units; and (b) Ms. Callaway's unsecured (and disputed) debt in the amount of $76,260, which is not a consumer debt because it arose out of a real estate contract entered into for investment purposes. *Cypher Chiropractic Ctr. v. Runski (In re Runski),* 102 F.3d 744, 747 (4th Cir. 1996) (in the context of redemption of equipment under Section 722, debts incurred for a business venture or with a profit motive do not fall within the category of debts incurred for "personal, family or household purposes").

Ms. Callaway argues in her post-hearing brief (Docket No. 26) that the $70,000 mortgage on the Plain Road Units should be considered to be consumer debt because Mr. Matthews testified that he and his wife may retire there one day (though, presumably, they would only retire to one of the units and would continue to rent the other). At the time of the filing of the case, the Plain Road Units were rented to third parties. Further, the M&T loan was used to buy

out the other investors in the units. Thus, the debt was "incurred" by Mr. and Mrs. Matthews for purposes other than "primarily for a personal, family or household purpose." 11 U.S.C. § 101(8). The majority of debts in the instant case, therefore, are not consumer debts.

Subsection (3) of Section 707(b), containing the "totality of the circumstances" test quoted above, starts with the phrase: "*In considering under paragraph (1)* whether the granting of relief would be an abuse of the provisions of this chapter . . ." (Emphasis added). Because subsection (1) is inapplicable for the reasons just described, subsection (3) is equally inapplicable.

This does not mean, however, that the Court is without the power, indeed the obligation, to determine whether this case was filed in good faith. Section 707(a) of the Code provides that the Court:

> may dismiss a case under [Chapter 7 of the Bankruptcy Code] only after notice and a hearing and only for cause, including—
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a). The term "including" is not limiting. 11 U.S.C. § 102(3).

In the case of *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), the Supreme Court held that the Bankruptcy Court's authority under 11 U.S.C. § 105(a) to take any action that is necessary or appropriate "to prevent an abuse of process" was adequate to deny a Debtor's motion to convert from Chapter 7 to Chapter 13 under Section 706 of the Code. The Supreme Court held in *Marrama*:

> Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to

10

>   the relief available to the typical debtor.  On the contrary, the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.

*Id.* at 374-75 (footnotes omitted).

Although there is some disagreement in the case law, the Court agrees with the authorities holding that a Chapter 7 case may be dismissed for cause under Section 707(a) when Section 707(b) does not apply.  *See Perlin v. Hitachi Capital Am. Corp.,* 497 F.3d 364, 373-74 (3rd Cir. 2007) ("in deciding a motion to dismiss based upon a debtor's lack of good faith, a bankruptcy court may consider these factors [substantial earnings and a lavish lifestyle] together with any other facts and circumstances surrounding the debtor's filing for bankruptcy"); *Indus. Ins. Servs. v. Zick (In re Zick),* 931 F.2d 1124 (6th Cir. 1991) (pre-BAPCPA holding that Section 707(a) authorizes dismissal for bad faith conduct); *Piazza v. Nueterra Healthcare Physical Therapy, LLC*, 469 B.R. 388, 391 (S.D. Fla. 2012); *United States v. Pedigo*, 329 B.R. 47 (S.D. Ind. 2005) (holding that the filing of a Chapter 7 petition in bad faith can constitute cause for dismissal under post-BAPCPA Section 707(a)); *McDow v. Smith*, 295 B.R. 69, 75 (E.D. Va. 2003) ("[U]nder [pre-BAPCPA] § 707(a), a debtor's bad faith acts or omissions may, in the totality of the circumstances, constitute cause for dismissal in the sound discretion of the bankruptcy court"); *In re Gilman,* 2012 WL 1230276 (Bankr. E.D. N.C. 2012); *In re Quinn,* 2012 WL 6737484 (Bankr. D. N.M. 2012);  *In re Watson*, 2010 WL 4497477 (Bankr. N.D. W. Va. 2010).  But see *Neary v. Padilla (In re Padilla),* 222 F.3d 1184 (9th Cir.2000); *In re Adolph*, 441 B.R. 909 (Bankr. N.D. Ill. 2011); *In re Lusane*, 2012 WL 3018050, at *1 (Bankr. D.C. 2012) ("a debtor's ability to pay creditors cannot be cause for a § 707(a) dismissal. This is true whether

the debtor's debts are principally consumer debts or non-consumer debts"); *In re Linehan*, 326 B.R. 474 (Bankr. D. Mass. 2005).

To be clear, a dismissal may not be based solely, or even primarily, on a debtor's ability to repay; there also has to be some evidence of debtor misconduct. *Perlin*, 497 F.3d at 374; *McDow*, 295 B.R. at 78-79. The ability to repay creditors, when considered by the Court, is generally measured by the amount the Debtor would be able to commit to a hypothetical Chapter 13 plan. *In re Christians*, 2012 WL 4846538 (Bankr. E.D. N.C. 2012); *In re Sonntag,* 2012 WL 1065482 (Bankr. N.D. W. Va. 2012).

In the pre-BAPCPA case of *Green v. Staples (In re Green)*, the Fourth Circuit considered a motion to dismiss under the then-applicable standard of "substantial abuse" under Section 707(b) of the Code. 934 F.2d 568 (4th Cir. 1991).[5] It held that, under Section 707(b), Bankruptcy Courts should consider the totality of the circumstances, including a Debtor's ability to repay a portion of his or her debts. *Id*. at 573. The Fourth Circuit identified the following factors in determining whether there was a substantial abuse:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
(3) Whether the debtor's proposed family budget is excessive or unreasonable;
(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
(5) Whether the petition was filed in good faith.

*Id*. at 572.

The Fourth Circuit more recently has held that it "need not make a determination as to the enduring applicability of the holding in *Green*." *Calhoun v. U.S. Trustee (In re Calhoun)*, 650

---

[5] The standard under Section 707(b) has since been amended to whether or not the case is an "abuse." The 2005 Amendments to the Bankruptcy Code also eliminated from Section 707(b) a presumption in favor of granting the Debtor a discharge.

F.3d 338, 342 (4th Cir. 2011). Several Bankruptcy Courts in the Fourth Circuit, including this Court, have found *Green* to continue to be instructive. *In re Christians*, 2012 WL 4846538, at *3; *In re Sonntag*, 2012 WL 1065482, at *3; *In re Bogart,* 2012 WL 3913093, at *2 (Bankr. E.D. Va. 2012), *aff'd*, Case No. 1:12-cv-1195-GBL-JFA (E.D. Va. 2013).

The Court, then, turns to the *Green* factors to determine whether this case should be dismissed for cause under Section 707(a).

> 1. *Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment.*

This case was not filed because of sudden illness, calamity, disability or unemployment. This factor weighs in neither party's favor.

> 2. *Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay.*

The Debtor did not take cash advances, nor did he make consumer purchases far in excess of his ability to repay. A variant of this factor must be considered, though. In between his first bankruptcy case and his second bankruptcy case (*see supra* n.4) the Debtor used approximately $14,000 from his own, non-exempt Scott & Stringfellow account (Account No. #1929) to make repairs and refurbishments for the Hillside Property and the Plain Road Units.[6] In response to the Court's questions, the Debtor stated that he used the Scott & Stringfellow account at a time when the REMI cash management account had a balance of approximately $3,000. He, therefore, could have paid for a portion of the repairs and upgrades by using the exempt cash in the REMI account instead of his personal non-exempt account. In effect, the Debtor converted a non-exempt asset ($14,000 from the Scott & Stringfellow account) for the benefit of his exempt assets (his home and two rental units) during the *one month* between his

---

[6] As noted above, the Debtor and his wife own both the Hillside Property and the Plain Road Units as tenants by the entirety. The properties, therefore, are exempt under Virginia law.

two bankruptcy cases. The Court can only conclude that Mr. Matthews made a conscious decision to "spend down" his non-exempt assets in favor of his exempt assets, in anticipation of filing this Chapter 7 bankruptcy case.

Another variant of this factor is the cruise taken by the Debtor and his wife in late September of 2012. The cruise cost approximately $7,000. It almost entirely depleted the BB&T Account (Account No. 7846), which had a balance of $7,801 at the start of the Debtor's Chapter 13 case. The Debtor and his wife took this cruise while the Debtor's Chapter 13 case was pending before this Court. This was a substantial and unauthorized expenditure of funds. Even though the Debtor had the funds in the BB&T Account, and therefore this was not technically a purchase "in excess of the Debtor's ability to repay," this expenditure is hardly indicative of a Debtor desiring to make any sacrifices in order to treat his creditors fairly.

    *3. Whether the debtor's proposed family budget is excessive or unreasonable.*

The Debtor's proposed family budget is represented in his Schedules I and J (as amended). *See* Docket No. 26. As filed, they are not excessive or unreasonable. However, as more fully discussed below, they are materially inaccurate.

    *4. Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition.*

The Debtor's Schedules I and J do not represent a true and accurate picture of the Debtor's financial condition as of the filing of this case, in three material respects:

- First, the Debtor has greatly overstated the amount of his mortgage payment on the Hillside Court Property. He listed $1,000.00 on Line 1 of Schedule J. In fact, according to the Debtor's testimony, the home equity line of credit on the Hillside Court Property requires a monthly payment of only $50.

> Therefore, the Debtor overstated his mortgage expense by **$950** per month on Line 1.
>
> - Second, the Debtor listed no income for his part-time teaching with Fauquier County. According to his own testimony, he earned roughly $3,200 in substitute teaching income in 2012, or gross income of **$266.67** per month.[7]
>
> - Finally, in both his original Schedules I and J and his Amended Schedules I and J, the Debtor lists "$0.00" on Line 8 (Income from real property), and does not list the mortgage payment to M&T Bank for the Plain Road Units. In fact, the Debtor and his wife are receiving a total of $2,290 from the Plain Road Units. Their mortgage payment for these units, on the other hand, is only $877 per month.[8]

Between the first two items, the Debtor's mortgage payment and his income from Fauquier County Public Schools, the Debtor's Schedule I understates his income by $1,217 per month $950 plus $267). Subtracting the negative net income of $672.84 on the Debtor's original Schedule J, this would mean that the Debtor has positive net income of $544 per month. Consequently, in a 36-month Chapter 13 plan, the Debtor could pay $19,584 towards the

---

[7] The Debtor testified that he is no longer working for the Fauquier County public school system. On his Amended Statement of Financial Affairs, however, the Debtor listed $340 in income from Fauquier County Schools for 2013, $3,612.50 for 2012, and $3,272.50 for 2011. Docket No. 26 (SOFA, Question No. 1). This case was filed on February 2, 2013. Therefore, for the one month in 2013 that preceded the filing of the Debtor's Chapter 7 petition (i.e., for January 2013), the Debtor earned $73 more than the above estimate of $267.

Mr. and Mrs. Matthews also received a tax refund for the tax year 2011 in the amount of $1,700. Mr. Matthews did not know the amount of his anticipated 2012 refund, but he estimated that it would be something less than the 2011 refund.

[8] On February 26, 2013, after the evidentiary hearing, at which the Debtor testified that he was obligated to pay only $50 per month on the home mortgage, the Debtor filed Amended Schedules in which he continued to list this mortgage payment at $1,000. Docket No. 26, Amended Schedule J, Line 1. He also continues to list "$0" for rental income. *Id.* at Line 8.

Callaway claim, amounting to as much as a 25% distribution on the Callaway claim.  It is not entirely clear to the Court, however, that Mr. Matthews would remain a "below median" Debtor if the rental income were counted on his means test (Form B-22).  If Mr. Matthews were an above-median Debtor in a Chapter 13 case, then he would be required to pay the same $544 for 60 months, for a total of $32,640, resulting in a hypothetical distribution on the Callaway claim closer to 50%.[9]

With respect to the third item, the rental income from the Plain Road Units, the Court accepts the Debtor's assertion that the units are held as tenants by the entirety.  The rents, therefore, are the proceeds of exempt property and are exempt from liquidation in Chapter 7.  At the same time, however, not listing the net income from these properties on Schedules I and J significantly understates the Debtor's current monthly income.  *See* 11 U.S.C. § 101(10A)(A) ("'current monthly income' means the average monthly income *from all sources*") (emphasis added); *Blausey v. U.S. Trustee*, 552 F.3d 1124 (9th Cir. 2009) (current monthly income includes disability insurance benefits even if they are excludable from gross income by the Internal Revenue Code); *Taylor v. United States (In re Taylor),* 212 F.3d 395, 397 (8th Cir. 2000) (affirming dismissal for substantial abuse; "[t]he fact that a pension is exempt from the reach of creditors does not preclude a bankruptcy court from finding that the pension is also disposable income for purposes of Chapter 13"); *In re Andrade,* 2011 WL 1559241, at 2 (Bankr. D.R.I. 2011) ("most courts addressing this issue are saying that exempt property should be included as disposable income"); *In re Briggs*, 440 B.R. 490 (Bankr. N.D. Ohio 2010) (current monthly income includes exempt pension income); *In re Wyatt*, 2008 WL 4572506 (Bankr. E.D. Va. 2008) (current monthly income includes Veterans Administration disability pay); *In re*

---

[9] These numbers do not take into account the cost of administration of a Chapter 13 case.  It is clear, however, that the distribution to Ms. Callaway in a Chapter 13 case could be substantial.

*Myles*, 2006 WL 6591834 (Bankr. N.D. Ga. 2006) (projected tax refunds); *In re Tolliver,* 257 B.R. 98 (Bankr. M.D. Fla. 2000) (proceeds of a worker's compensation settlement).[10]

The Plain Road Units are rented for $1,190 and $1,100 per month, for a total of $2,290 per month. Mr. Matthews testified that the monthly mortgage payment on the units is $877 per month. Even allowing for a generous 20% reserve for maintenance and repairs, Mr. and Mrs. Matthews still receive net income of $955 per month. This amount alone (i.e., not counting the Debtor's actual mortgage payment and the income from Fauquier County), would enable the Chapter 13 Debtor to pay $34,380 (or 44%) on the Callaway claim over a 36 month plan, and $57,300 (or 73%) over a 60 month plan.

Finally, on February 26, 2013, after the evidentiary hearing, the Debtor filed Amended Schedules. Docket No. 26. In his Amended Schedules I and J, the Debtor calculates that he has a monthly net income of negative $1,027.40. Adding back in the $950 for the phantom mortgage payment and $267 for Fauquier County Schools, the Debtor would have positive monthly net income of $190. Adding the $955 in net rental income to the foregoing $190, the Debtor would have $1,145 with which to pay the Callaway claim on a monthly basis. This equates to $41,220 (53%) in a 36 month plan, and $68,760 (or 88%) in a 60 month plan.

For the foregoing reasons, the Court finds that Mr. Matthews' Schedules significantly misrepresented his current monthly income.

---

[10] This does not mean that all exempt income must be counted for purposes of projected disposable income. Specifically, a number of recent cases have held that Social Security income is expressly exempted from the definition of current monthly income under Section 101(10A) of the Code. *See Drummond v. Welsh (In re Welsh),* 2013 WL 1192961 (9th Cir. 2013) (excluding Social Security income from projected disposable income); *Beaulieu v. Ragos (In re Ragos),* 700 F.3d 220 (5th Cir. 2012); *Anderson v. Cranmer (In re Cranmer),* 697 F.3d 1314 (10th Cir. 2012). Mr. Matthews' rental income, unlike Social Security income, is not expressly excluded under Section 101(10A) from the definition of current monthly income.

   5. *Whether the petition was filed in good faith.*

The final factor of whether the petition was filed in good faith requires a synthesis of the foregoing factors. Here, the Debtor converted $14,000 in non-exempt funds into improvements to his and his wife's exempt assets during the one month that he was not in a bankruptcy case before this Court. He used $7,000 to take a cruise with his wife while he was in Chapter 13. He has materially understated his current monthly income in this case. Finally, he has the ability to meaningfully repay a portion of the only claim in the case (other than his mortgage payments, on which he is fully current) ― the Callaway claim.

The Court finds, in viewing the totality of the circumstances, including (but not solely considering) the Debtor's ability to repay a portion of the Callaway claim, that this case was not filed in good faith and must be dismissed for cause under Section 707(a) of the Code.

## Conclusion

For the foregoing reasons, the Court will: (a) grant the Motion to Dismiss the case with prejudice for a period of one year, as requested by the movant; and (b) deny the Debtor's Motion under Section 362(c)(3) of the Bankruptcy Code as moot.

A separate Order shall issue.

Date: Apr 3 2013                                /s/ Brian F. Kenney
                                                Brian F. Kenney
Alexandria, Virginia                            United States Bankruptcy Judge


                                                Entered on Docket: April 3, 2013

Copies to:

Richard L Matthews
4592 Hillside Court
Warrenton, VA 20187
Debtor

Scott Alan Weible, Esquire
Scott Alan Weible, P.L.L.C.
The Haymarket Professional Building
14540 John Marshall Highway, Suite 201
Gainesville, VA 20155-1693
Counsel for the debtor

Ann M. Callaway, Esquire
15 Garrett Street
Warrenton, VA 20186
Conservator for George A. Gray, III

Donald F. King, Esquire
Odin, Feldman & Pittleman
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
Chapter 7 Trustee

Jack Frankel, Esquire
Office of the U.S. Trustee
115 South Union Street, Ste. 210
Alexandria, VA 22314